**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JUSTIN S. N.,

Plaintiff,

v. Civ. No. 25-949 SMD/GBW

FRANK BISIGNANO,
*Commissioner of the Social Security Administration*,

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter comes before me pursuant to the Court's Order of Reference (*doc. 30*) and Plaintiff's Brief in Support of Motion to Reverse and Remand the Social Security Agency ("SSA") decision to deny Plaintiff Social Security Disability Insurance Benefits ("SSDI"). *Doc. 22*. For the reasons explained below, I recommend DENYING Plaintiff's Motion and AFFIRMING the judgment of the SSA.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSDI on May 30, 2023, alleging disability beginning September 30, 2021. Administrative Record ("AR") at 234. The alleged onset date was subsequently amended to January 1, 2021. AR at 54. Plaintiff's claims were denied on initial review on July 14, 2023, and again on reconsideration on September 12, 2023. AR at 98, 108. On August 12, 2024, a hearing was held by an

Administrative Law Judge ("ALJ"). AR at 47–79. The ALJ issued an unfavorable decision on November 6, 2024. AR at 27–38. The Appeals Council denied review on August 5, 2025, making the ALJ's denial the final decision of the Commissioner. AR at 1. On September 29, 2025, Plaintiff filed suit in this Court. *Doc. 4*.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.2d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III. ALJ EVALUATION

### A. Legal Standard

For purposes of SSDI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id.* § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to

perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, considering the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**B. <u>The ALJ's Decision</u>**

On November 6, 2024, the ALJ issued a decision denying Plaintiff's application for SSDI. AR at 27–38. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from January 1, 2021, the alleged onset date, through September 30, 2021, his date last insured. AR at 30.

At step two, the ALJ found Plaintiff had the following severe impairments: seizure disorder, ventral hernia status-post surgical repair, and obesity. *Id*. The ALJ found that Plaintiff's status post multiple skin grafts from lower extremity burns was a medically determinable, but non-severe impairment. AR at 30–31. The ALJ found that Plaintiff's posttraumatic stress disorder ("PTSD"), bipolar disorder, and anxiety disorder were non-medically determinable impairments during the relevant time period. AR at 31.

At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings. AR at 31–32. In particular, the ALJ found that Plaintiff's seizure disorder did not meet or medically equal Listing 11.02. *Id.*

At step four, the ALJ found Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) except never climb ladders, ropes, or scaffolds; he must completely avoid unprotected

> heights, hazardous moving machinery, open flame, and open bodies of water; he cannot operate motorized vehicles on the job.

AR at 32. In making this finding she concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR at 34. She found the medical opinions of State agency consultants Dr. Richard Sorensen, Dr. Uwe Jacobs, Dr. Randal Reid, and Dr. Meghana Karande persuasive. AR at 35–36. The ALJ stated that she had "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." AR at 31.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that he could perform jobs that exist in significant numbers in the national economy. AR at 36. Specifically, the ALJ found that Plaintiff could perform the requirements of two representative occupations: (1) hand packager (DOT 920.587-018); and (2) dishwasher (DOT 318.687-010). AR at 37. Accordingly, the ALJ concluded that Plaintiff was not disabled from January 1, 2021, through September 30, 2021. *Id.*

## IV. ANALYSIS

Plaintiff asserts that the ALJ erred by failing to adequately account for his seizure disorder, burn injuries, medication side effects, and related symptoms,[1] and that "new and material" evidence demonstrated his disability. *Doc. 22* at 4–6. Defendant contends that the ALJ's decision was supported by substantial evidence and that the additional evidence was not material. *Doc. 28*. For the reasons that follow, I find no reversible error and recommend affirming the decision of the SSA.

### A. **Waiver of Arguments**

As an initial matter, I find that many of the arguments raised in Plaintiff's opening brief were inadequately developed. Courts may decline to consider issues that are "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Adams v. Fed. Aviation Admin.*, 168 F.4th 1271, 1285 (10th Cir. 2026) (quoting *United States v. Clay*, 148 F.4th 1181, 1201 (10th Cir. 2025)). Plaintiff's opening brief consists mainly of unsupported, one- to two-sentence statements of error accompanied by bullet point lists of symptoms. *See generally doc. 22*; *see, e.g.*, *Adams*, 168 F.4th at 1285 (holding that "[e]ven construing [the] brief liberally, we cannot conclude the argument is adequately developed" where the plaintiff "advance[d] his due process

[1] I find that the other issues raised in Plaintiff's opening brief, as well as any arguments that were raised for the first time in Plaintiff's reply brief, are waived for the reasons explained below. In particular, I find that Plaintiff waived any arguments regarding his alleged mental limitations because they were not included in the opening brief. *See generally doc. 22*.

challenge in one paragraph of his opening brief, with no meaningful analysis or argument"). The brief includes no citations to the administrative record, nor any specific references to particular visits, records, or other evidence that would show how Plaintiff's general statements are tied to particular arguments about his case. While the brief variously lists more than twenty symptoms and/or impairments, most are accompanied by no attempt at meaningful analysis or argument.

Because he is a pro se litigant, Plaintiff's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," but the Court must nevertheless require him to "follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citations omitted); *see also Davison v. Bisignano*, 2026 U.S. App. LEXIS 28473, at *4 (10th Cir. Sept. 17, 2026) (applying the waiver rule to a pro se social security claimant). The court cannot craft arguments on his behalf. *Garrett*, 425 F.3d at 841. The plain rule is that "[a]rguments inadequately briefed in the opening brief are waived." *Adams*, 168 F.4th at 1285 (citation omitted). Therefore, while I have liberally construed Plaintiff's brief, issues that were merely alluded to in the opening brief with no accompanying argument have been waived and will not be considered.

Plaintiff's reply brief contains several new arguments not included in the initial brief. *See doc. 29*. To the extent these arguments fairly relate to issues raised in the

opening brief, I have considered them. However, any wholly new arguments in the reply brief are deemed waived and will not be considered.

**B. Consideration of Plaintiff's Impairments and Symptoms**

Plaintiff argues that the ALJ improperly evaluated his seizure disorder and various symptoms, that the RFC was not supported by substantial evidence, and that the vocational findings at step five were unreliable. *Doc. 22* at 4–6. For the reasons that follow, I find that the ALJ adequately considered Plaintiff's symptoms and impairments, that the RFC determination was supported by substantial evidence, and that the ALJ did not err at step five.

1. Seizure Disorder

The ALJ found at step two that Plaintiff's seizure disorder was a severe impairment. AR at 30. However, in assessing Plaintiff's RFC, the ALJ determined that Plaintiff's allegations about his symptoms were "not entirely consistent with the evidence." AR at 36. The ALJ discussed the following reported symptoms. AR at 33. In a Disability Report submitted in August 2023,[2] Plaintiff noted that "[s]ince s[eiz]ure medication was changed mental & physi[c]al condition have worsen[ed]" and "partial se[iz]ures increased." AR at 319. Another Disability Report dated October 26, 2023, indicated that Plaintiff experienced grand mal seizures about once a month and that he

[2] While the form itself appears to be undated, the Court Transcript Index submitted with the Administrative Record indicates a date of August 23, 2023. *Doc. 10-1* at 2.

would "sleep for about a day and a half afterwards." AR at 329. At the hearing, Plaintiff testified that during the relevant time period he was having three or four grand mal seizures, ten to twelve petit mal seizures, and seven to eight partial onset seizures per month. AR at 59–61. The ALJ also noted Plaintiff's testimony that when seizures occurred he "would be incoherent and do strange things like walk to his neighbor's home." AR at 33. In a supplemental post-hearing statement dated August 14, 2024, Plaintiff explained that he did not report every seizure he had to the neurologist because he did not remember all of them. AR at 366.

The ALJ acknowledged Plaintiff's "long history of seizures," but concluded that "treatment records during the relevant period and shortly thereafter do not show his seizures to be as frequent as he testified to." AR at 36. She discussed Plaintiff's history of seizures, noting that they reportedly began in 2009, but that following a vehicle accident in November 2018 Plaintiff claimed he had gone nine months without having a seizure. AR at 34. In December 2020, Plaintiff told his neurologist that he had had one generalized seizure and a few small spells. *Id.*; *see* AR at 570. On March 8, 2021, at a neurology follow-up, he indicated the same. AR at 34; *see* AR at 567. He denied having had any seizures at primary care appointments in August and September 2021. AR at 34; *see* AR at 374, 377 (Plaintiff reported "no seizures" at appointments on August 13, 2021, and September 11, 2021). At a neurology appointment on August 17, 2021,

Plaintiff reported no generalized seizures and a few small spells. AR at 34; *see* AR at 551. The ALJ also noted that on November 15, 2021, after the date last insured, Plaintiff told his neurologist that he had three seizures that month. AR at 34; *see* AR at 548. After considering Plaintiff's self-reported symptoms, the agency consultants' medical opinions, and the record, the ALJ concluded that Plaintiff's seizures "would result in some postural and environmental limitations due to the danger of having a seizure around things such as unprotected heights and hazardous moving machinery." AR at 36. She therefore incorporated limitations related to climbing, heights, machinery, flame, water, and motorized vehicles into the RFC. AR at 32.

Plaintiff argues that the ALJ improperly evaluated his seizure disorder because she "selectively emphasized favorable evidence while minimizing contrary evidence." *Doc. 22* at 5; *see Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). But Plaintiff does not actually identify any contrary evidence that the ALJ ignored. He argues that the ALJ "cherry-picked 'stable' visits" when discussing the medical record, *doc. 29* at 2; however, he cites no visits during the relevant period that the ALJ failed to discuss. *C.f. Hardman*, 362 F.3d at 681 ("The ALJ barely mentioned . . . all of the other medical evidence in the record indicating that claimant did suffer severe lumbar pain from

degenerative disc disease."); *Bryant v. Comm'r*, 753 F. App'x 637, 641 (10th Cir. 2018) ("[T]he ALJ . . . ignored other portions of the same reports that confirmed some of Dr. Khalid's observations and tended to support her conclusions.").

On review of the record, I find no evidence that the ALJ selectively ignored evidence that was contrary to her findings. The ALJ discussed medical visits throughout the relevant time period as well as shortly before and after, in December 2020, March 2021, August 2021, September 2021, and November 2021. *See* AR at 34. At more than half of these appointments, Plaintiff reported either no seizures or no generalized seizures. *See* AR at 374, 377, 551. At no point until November 15, 2021, after the date last insured, did Plaintiff report more than one generalized seizure in the last month. Plaintiff's contention that there was "longitudinal, uncontradicted testimony of 3 to 4 grand mal seizures and 10 to 12 petit mal seizures per month," *doc. 29* at 2–3, is therefore inaccurate. While the ALJ was not permitted to cherry-pick favorable evidence and ignore contradictory evidence, she was "entitled to resolve conflicts in the record." *Bryant*, 753 F. App'x at 641 (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *Casias v. Sec'y of Health & Human Servs.*, 993 F.2d 799, 801 (10th Cir. 1991)). Here, the ALJ discussed the conflicting evidence and ultimately determined that Plaintiff's testimony about his symptoms, particularly the frequency of his seizures, was

inconsistent with the treatment records and other evidence.[3] AR at 34, 36. Consequently, although her conclusion was unfavorable to Plaintiff, it was supported by substantial evidence.

2. Burn Injuries

Plaintiff challenges the ALJ's evaluation of his burn injuries, skin grafts, and related symptoms. *Doc. 22* at 5; *doc. 29* at 7–8. At step two, the ALJ discussed Plaintiff's "prior burns to his lower extremities in August 2016," which had been treated with skin grafts. AR at 30. The ALJ noted that "[s]ince the current alleged onset date of January 1, 2021, treatment records make no mention of significant ongoing symptoms attributed to his old burns." *Id.* She discussed treatment records from June 2021, August 2021, and September 2021 showing normal gait, good range of motion, and no complaints of muscle aches, weakness, joint pain, or swelling in his extremities. AR at 30–31; *see* AR at 374, 377, 551, 555. In addition, the ALJ discussed treatment notes from 2024 where Plaintiff reported that he walked several miles a day for exercise, did woodworking, and was helping his son to remodel his home. AR at 31; *see* AR at 896, 904, 921, 957. The ALJ concluded that Plaintiff's history of burns "did not result in any significant

[3] Plaintiff argues in the reply brief that the ALJ "improperly discounted the frequency of Plaintiff's seizures on the absurd, arbitrary grounds that he 'did not keep a seizure log.'" *Doc. 29* at 3. The ALJ's decision noted that Plaintiff "indicated that he did not remember all of his seizures and did not keep a seizure log." AR at 33. However, the ALJ did not indicate that she discounted the frequency of Plaintiff's seizures on that basis or that any of her conclusions were based on Plaintiff's failure to keep a seizure log.

symptoms or treatment" and would therefore be expected to result in no more than minimal limitations to his ability to perform basic work activity. AR at 31. At step four, the ALJ again discussed Plaintiff's testimony that his burn injuries caused ongoing symptoms including nerve damage. AR at 33.

Plaintiff argues that the RFC findings were inconsistent with evidence of his burn injuries, and that the ALJ "minimized" evidence of his multiple skin grafts, standing limitations, and chronic pain. *Doc. 22* at 3, 5. However, he does not point to any treatment records that would tend to support his allegations of standing limitations or severe pain during the relevant period. The ALJ considered and discussed Plaintiff's testimony, compared it with the medical evidence and other evidence of record,[4] and appropriately resolved the conflict. *See Bryant*, 753 F. App'x at 641. Notably, no medical source recommended additional limitations based on Plaintiff's prior burn injuries or any other medically determinable impairments. *See* AR at 105, 116. Because the ALJ considered all relevant records and "more than a mere scintilla" of evidence, *Casias*, 933 F.2d at 800, supported her conclusions, I find no error in her consideration of

[4] In the reply brief, Plaintiff argues that the ALJ "improperly relied" on evidence that he assisted with his son's home remodel and "severely mischaracterize[d] Plaintiff's involvement, which was strictly advisory and verbal, completely devoid of heavy physical exertion." *Doc. 29* at 5. However, Plaintiff does not cite to the administrative transcript or any other evidence for the proposition that his role was "strictly advisory and verbal." The relevant treatment record states: "He reported that he has been helping his son remodel his home and has some family members in Denver City who are asking him to do some remodeling work." AR at 921. Therefore, it does not appear that the ALJ mischaracterized the evidence. Moreover, the ALJ's conclusion was abundantly supported by other medical evidence and evidence of Plaintiff's daily activities.

Plaintiff's burn injuries.

3. Medication Side Effects

Next, Plaintiff argues that the ALJ failed to adequately account for the side effects caused by his medications. *Doc. 22* at 6; *doc. 29* at 5–6. The ALJ specifically discussed Plaintiff's claims of side effects including tiredness, loss of appetite, increased urination, nausea, mental strain, vision issues, and hearing issues; Plaintiff's hearing testimony about his new seizure medication; neurology visits in December 2020 and March 2021 where Plaintiff reported frequent dizziness since his lamotrigine dosage was increased; and a neurology visit in August 2021 where he reported no dizziness from lamotrigine lately. AR at 33–34; *see* AR at 317, 551, 567. On consideration of this and other evidence, the ALJ found that although Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms . . . [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR at 34.

Notably, Plaintiff does not point to any contemporaneous treatment records or other evidence indicating that he experienced other medication side effects during the relevant period. *See James v. Comm'r*, 2024 U.S. App. LEXIS 6221, at *9 (10th Cir. Mar. 15, 2024) (medical evidence that "contained scant evidence of any side effects, let alone

debilitating side effects" was "more than adequate to support the ALJ's factual finding that James did not suffer debilitating side effects from pain medications"); *T.D.T. v. O'Malley*, 2024 U.S. Dist. LEXIS 115859, at *13–14 (D. Colo. June 28, 2024) (rejecting argument that the ALJ failed to address medication side effects where the plaintiff had testified about side effects but failed to cite "any evidence in the record that she ever reported any medication side effects to her treatment providers"). On the contrary, it appears that the ALJ considered all evidence of medication side effects during the relevant period. Her decision not to include additional restrictions in the RFC was supported by the treatment records, which indicated only that Plaintiff had experienced dizziness from lamotrigine, but was no longer experiencing dizziness by August 2021. *See* AR at 317, 551, 567. Therefore, while another fact-finder might arguably have reached a different conclusion, I find that the ALJ's determination was supported by substantial evidence. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.").

4. <u>Vocational Findings</u>

Plaintiff argues that the jobs identified by the vocational expert ("VE") were not compatible with the RFC's seizure-related restrictions on machinery, climbing, and driving. *Doc. 22* at 6. At step five, the ALJ found that Plaintiff could perform the

representative occupations of hand packager (DOT 920.587-018) and dishwasher (DOT 318.687-010). AR at 37. At the administrative hearing, the VE testified that an individual could perform both of these jobs with the restrictions of: never climbing ladders, ropes, or scaffolds; completely avoiding unprotected heights, moving machinery, open flame, and open bodies of water; and never operating motorized vehicles on the job. AR at 76–77. Plaintiff does not challenge the VE's methodology or provide any other basis for his argument. I therefore find that the Commissioner carried his burden at step five to show that Plaintiff was able to perform other work in the national economy, considering Plaintiff's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### C. <u>Consideration of New Evidence</u>

Finally, Plaintiff argues that additional medical evidence submitted after the ALJ's decision supports a finding of disability.[5] *Doc. 22* at 6. The regulations state that the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and

[5] I note that this is a generous characterization of Plaintiff's argument. In fact, Plaintiff merely stated in the opening brief that he "has continued receiving treatment for seizure-related conditions after the ALJ decision" and that "[a]dditional medical evidence may further demonstrate" several listed symptoms. *Doc. 22* at 6. Defendant construed this as an argument that new evidence submitted to the Appeals Council after the ALJ's decision should have altered the outcome. *See doc. 28* at 12–14. It is doubtful that Plaintiff's statements about "new and material evidence" constituted an adequately briefed argument. *See Adams*, 168 F.4th at 1285. Nevertheless, in light of Plaintiff's pro se status and because Defendant specifically addressed the issue in the response brief, I have considered it here.

there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see also Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) ("If the evidence does not qualify [as new, material, and related to the period before the ALJ's decision], the Appeals Council does not consider it and it plays no role in judicial review."). Plaintiff submitted a letter from a pharmacy employee describing a seizure incident on March 13, 2025; a letter from a Vocational Rehabilitation Counselor dated April 8, 2025, describing Plaintiff's efforts to find employment and opining that he is unable to work at this time; and an EMS report from the Hobbs Fire Department related to the seizure incident on March 13, 2025. AR at 7–8, 11–15. The Appeals Council denied review, stating:

> The Administrative Law Judge decided your case through September 30, 2021. The additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 30, 2021.

AR at 2.

I find no error in the Appeals Council's determination. The additional evidence does not relate to Plaintiff's medical condition before September 30, 2021, the date last insured. Two of the documents relate solely to a seizure on March 13, 2025. AR at 7, 11–15. The vocational letter is dated April 8, 2025, and opines that Plaintiff is "unable to work at this time" because of his seizure disorder.[6] AR at 8. While "evidence

[6] The letter notes that Plaintiff first applied for vocational rehabilitation in May of 2018 and that

documenting a claimant's condition after [his] date last insured may be considered if it relates to the insured period," *White v. Berryhill*, 704 F. App'x 774, 779 (10th Cir. 2017), the Appeals Council reasonably concluded that information about Plaintiff's medical condition in 2025 did not meaningfully relate to the insured period, which ended more than three years prior. *See Berensen v. Comm'r SSA*, 772 F. App'x 644, 647 (10th Cir. 2019) (concluding the Appeals Council did not err in declining to consider evidence where "the records post-dating the administrative law judge's decision do not address what [the claimant's] condition had been prior to that decision"). I therefore find no reason to reverse based on Plaintiff's additional evidence.

## V. CONCLUSION

For the foregoing reasons, I recommend DENYING Plaintiff's Motion to Reverse and Remand (*doc. 22*) and AFFIRMING the Commissioner's decision.

**IT IS SO ORDERED.**

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

the program "worked with [him] for two years without success." AR at 8. However, the substance of the letter, particularly its description of Plaintiff's work-related limitations, relates to the time since he "recently applied for services again to attain employment." *Id.* It does not communicate any substantive, material information about Plaintiff's limitations before the date last insured.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**